IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON MARCELLE and CRYSTAL LEGRAND, individually and as Administratrix of the Estate of DAVAIAY LEGRAND, and as parent and natural guardian of SHIANTI LEGRAND and NIJAIRE LEGRAND, minors,** | : : : : : : : | **CIVIL ACTION**  **NO. 07-CV-4376** |
| Plaintiffs | : : | |
| vs. | : : | |
| **CITY OF ALLENTOWN, et al.,** Defendants | : : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                       September 15, 2010

On May 30, 2007, two patrol cars from the Allentown Police Department collided with each other at an intersection in Allentown while responding to an emergency call. As a result of the collision, a four-year-old pedestrian bystander was killed and an adult pedestrian bystander was seriously injured. The victims and their families filed civil rights suits under 42 U.S.C. § 1983 against the two police officers, Brett M. Guth and John C. Buckwalter, and the City of Allentown. Following completion of discovery, the defendants moved for summary judgment. In a Memorandum Opinion and Order entered on March 31, 2010, the late Honorable Thomas M. Golden granted Mr. Guth's motion for summary judgment, and granted in part and denied in part the joint motion for summary judgment filed by the City and Mr. Buckwalter. The result was that only one of the

plaintiffs' federal claims remain (Count III), that being a Monell[1] claim against the City. In addition, certain state law claims against Mr. Guth and the City also remain. The remaining Monell claim concerns whether the City acted with deliberate indifference to the rights of its citizens, particularly pedestrian bystanders, when it hired Mr. Guth despite knowing about his prior driving record and then in retaining Mr. Guth after an incident at the Police Academy. The City filed a motion to certify for an immediate interlocutory appeal the portion of the Order that denied the City's motion for summary judgment on the Monell hiring claim. Following the untimely death of Judge Golden, this case was re-assigned to my docket. For the reasons that follow, I will grant the motion in its entirety.

In his Memorandum, Judge Golden noted that a municipality may not be held liable under § 1983 for the actions of its agents solely on the basis of *respondeat superior*. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, a municipality may be held liable only if it has a policy or custom that is the "moving force" behind a constitutional violation. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404. (1997). The court further observed that in order to establish § 1983 liability against a municipality, the plaintiffs must show that the City acted with deliberate indifference to the plaintiffs as well as "a direct causal link" between the policy and a constitutional violation. City of Canton v. Harris, 489 U.S. 378, 385, 388 (1989). The

---

[1] Monell v. Dept. of Social Serv. of N.Y., 436 U.S. 658 (1978).

plaintiffs claimed that the City's decision to hire Mr. Guth despite knowing of his past reckless driving record, constituted deliberate indifference to the safety of the citizens of the City, particularly pedestrians.

Judge Golden then noted:

> The United States Supreme Court has cautioned that "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause. In the broadest sense, every injury is traceable to a hiring decision." Bryan County, 520 U.S. at 415. Courts must be careful not to allow "municipal liability [to] collapse[] into *respondeat superior* liability." Id. "Where the plaintiff alleges that a single hiring decision is the basis for municipal liability, 'the connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.'" Bryan County, 520 U.S. at 412. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Bryan County, 520 U.S. at 411-412 (1997). Any finding of culpability related to the hiring decision "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." Id. (Emphasis in original).

See Memorandum Opinion and Order (Document #46 at pp. 27-28).

Under 28 U.S.C. § 1292(b), when a district judge is of the opinion that an Order, which is not otherwise appealable, involves a controlling question of law to which there is substantial ground for difference of opinion and that an immediate appeal from the Order

may materially advance the ultimate termination of the litigation, he may certify that Order for immediate appeal. 28 U.S.C. § 1292(b). In determining whether to certify an issue for immediate appeal, a court must determine: (1) whether the issue is a controlling issue of law; (2) whether there are substantial grounds for difference of opinion regarding the issue under consideration; and (3) whether an immediate appeal will materially advance the ultimate termination of the litigation. In re Chocolate Confectionary Antitrust Litigation, 607 F.Supp. 2d 701, 704 (M.D. Pa. 2009). The decision to certify an interlocutory appeal rests with the discretion of the district court. Id. "While the district court has sole discretion in deciding whether to certify an Order, the decision to do so is appropriate only in exceptional circumstances because of the strong policy preference against piecemeal litigation." Miron v. BDO Seidman, LLP, No. 04-968, 2006 WL 3742772, at *2 (E.D. Pa. Dec. 13, 2006).

With respect to the first element, an interlocutory Order "involves a controlling question of law if either (1) an incorrect disposition would constitute reversible error if presented on final appeal, or (2) the question is 'serious to the conduct of the litigation either practically or legally.'" In re Chocolate Confectionary Antitrust Litigation 607 F.Supp. 2d at 705 (citation omitted). "[O]n the practical level, saving of time of the district court and of expense to the litigants was deemed by the sponsors [of 28 U.S.C. § 1292(b)] to be a highly relevant factor." Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974). Here, were the Third Circuit to agree with the City's contention and find,

as a matter of law, that the City did not act with deliberate indifference when it hired Mr. Guth, the only possible result would be reversal of the portion of the March 31, 2010 Order which denied the City's motion for summary judgment on the <u>Monell</u> hiring claim. The Third Circuit would then direct this court to enter judgment in favor of the City and against the plaintiffs on this lone remaining federal claim. Therefore, an incorrect disposition on the <u>Monell</u> hiring claim would clearly constitute reversible error if presented on final appeal.

Moreover, the question of whether the City acted with deliberate indifference when hiring and retaining Mr. Guth is "serious to the conduct of the litigation either practically or legally." If the Court of Appeals were to hold that the City was not deliberately indifferent when it hired and retained Mr. Guth, there would no longer be any federal claims remaining, and I would likely dismiss the remaining state law claims without prejudice to the plaintiffs bringing them in the appropriate state court. See <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.") It would amount to an incredible waste of time and expense for the litigants and the court if I were to conduct a lengthy jury trial on the lone remaining federal claim, only to find out on direct appeal that summary judgment should

have been entered on that claim against the plaintiffs and in favor of the City.  For these reasons, I find that the first element is satisfied.

With respect to the element of substantial ground for difference of opinion, I recognize that the parties agree that the City's conduct in hiring Mr. Guth must be evaluated under a "deliberate indifference" standard as defined in Bryan County. However, given the unique facts of this case and the lack of any precedential application of the Supreme Court's relatively recent decision in Bryan County from the Third Circuit to such facts, I find this case presents an issue that should be decided by the Third Circuit before it proceeds any further.

I believe that Judge Golden appropriately applied the Supreme Court's narrow holding in Bryan County to the facts of this case in concluding that, after construing all the facts in favor of the plaintiffs, the question of whether Mr. Guth, given his driving record, was highly likely to inflict the particular injury suffered by the plaintiffs is at the very least a question for a jury.  Specifically, the court concluded that a reasonable jury could find that it was "highly likely that, based on Guth's reckless driving history, he would take his eyes off the road, speed through a red light (General Order 5-1 required police officers responding to emergencies to stop at a red light) and cause injury to pedestrian bystanders."  (Document #46 at p. 28).  The court noted that it was "undisputed that at the time he applied to the Police Department in 2005, Mr. Guth had received a plethora of traffic citations between 1997 and 2002.  Six of these citations

were for speeding, including one for driving 104 miles per hour.  One of the speeding citations even occurred while Guth's license was suspended for a previous DUI arrest." Id.

Judge Golden also noted that both Assistant Police Chiefs Howells and Manescu were consciously aware of and concerned about Mr. Guth's record.  Mr. Manescu testified that, "Obviously, having that amount of violations over a period of time, I think had us all concerned."  Id.  Mr. Howells admitted that the amount of citations Mr. Guth had received were "unusual" and more than most candidates.  Id.  Chief MacLean testified that he knew of an applicant with multiple driving citations, but did not specifically associate that record with Mr. Guth.  Id.  Chief MacLean testified that driving history is particularly important in hiring police officers because they spend considerable time driving.  Id. at pp. 28-29.  He even consulted with the City's attorney concerning the hiring of Mr. Guth.  Id. at p. 29.  Chief MacLean knew that Mr. Guth had a veteran's preference and a jury could infer that he was concerned that not hiring him might lead to potential legal difficulties for the City.  Id.  The City decided to hire Mr. Guth despite his driving record and even adopted a new "look back" rule for driving violations.  Id.

Finally, the court noted that "[a]lthough all of Guth's driving citations occurred more than four years prior to his application, his aggressive driving inclination once again resurfaced in the tailgating incident at the Police Academy in 2006."  Id.  The court noted that although Chief MacLean reprimanded Mr. Guth for this incident, Chief MacLean

unfortunately failed to "connect the dots" that the tailgating incident was caused by the same individual about whom he had previously conferred with the Assistant City Solicitor. Id. Based on this record, the court concluded that

> a reasonable jury could find the City's actions in hiring Guth despite being beware of his previous driving record and then in retaining him despite the tailgating incident at the Police Academy in 2006 constitute deliberate indifference to the safety of the public, particularly pedestrian bystanders. Indeed, the accident occurred only nine days after Guth was allowed to patrol on his own. The court also finds that a reasonable jury could find a direct causal link between the City's decision to hire Guth and Guth taking his eyes off the road and speeding through a red light and causing harm to pedestrian bystanders. The court does not find that the nexus between the act of hiring Guth and the accident at issue is too tenuous to take the issue of causation from the jury.

Id.

Nevertheless, I realize that the question is a close one and that reasonable minds could differ. For instance, the City argues in its motion that Mr. Guth's driving violations occurred more than four years before he was hired and that excessive speed did not play any role in causing the accident. The City also argues that failing to hire Mr. Guth based on driving violations which occurred over four years before he was hired would have violated Pennsylvania veterans preference laws as Mr. Guth was a former marine.

In response, I note that although Mr. Guth's many driving violations occurred four years in the past, his penchant for reckless driving resurfaced at the Police Academy after he was hired in 2006. A jury could conclude that Mr. Guth was indeed speeding through

the intersection at 35 miles per hour because, according to General Order 5-1, he should have come to a complete stop at the intersection. Thus, I find that the second element is also satisfied.[2]

Finally, Section 1292(b) requires the district court to conclude that permitting an interlocutory appeal of an otherwise non-appealable Order "may materially advance the ultimate termination of the litigation." 28 U.S.C. 1292(b). Under this prong, a court should "evaluate whether an appeal could eliminate the need for a trial, simplify a case by foreclosing complex issues, or enable the parties to complete discovery more quickly or at less expense." In re Chocolate Confectionary Antitrust Litigation, 607 F.Supp. 2d at 707. I am aware that discovery has already been completed in this case. However, as noted above, any trial of the federal and state claims in this matter would be quite lengthy and quite expensive. Were the Court of Appeals to reach a different conclusion on the only remaining federal claim, the entire case would be dismissed and there would be no need for a trial. As a result, the need for a lengthy and costly trial would be completely obviated. For these reasons, I find that permitting an interlocutory appeal would certainly advance the ultimate termination of this litigation.

In sum, while wary of permitting piecemeal litigation, I find that the present issue

---

[2] The City also takes issue with the fact that the court allowed the hiring claim to proceed to a jury even though it found Mr. Guth himself had not engaged in conscience shocking conduct. The court reminds the City that, pursuant to well-settled jurisprudence, the conduct of Mr. Guth was evaluated under a strict "intent to harm" standard, while the conduct of the City was evaluated under the less demanding "deliberate indifference" standard.

involves a controlling question of law about which there is substantial difference of opinion, the appeal of which will materially advance this litigation.  Accordingly, I will grant the certificate of appealability.

      An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASON MARCELLE and CRYSTAL LEGRAND, individually and as Administratrix of the Estate of DAVAIAY LEGRAND, and as parent and natural guardian of SHIANTI LEGRAND and NIJAIRE LEGRAND, minors, | : : : : : : : : | CIVIL ACTION  NO. 07-CV-4376 |
| Plaintiffs | : : | |
| vs. | : : | |
| CITY OF ALLENTOWN, et al., Defendants | : : | |

**O R D E R**

AND NOW, this   15th   day of September, 2010, upon consideration of the defendants' motion to certify Order for interlocutory appeal (Document #48), and the plaintiffs' response thereto, it is hereby ORDERED that the motion is GRANTED.

IT IS FURTHER ORDERED that:

1.   The Order entered on March 31, 2010 denying in part the City of Allentown's motion for summary judgment is hereby certified to provide the basis for an interlocutory appeal by the City of Allentown to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 1292(b) and the defendants are allowed ten (10) days from the date of entry of this Order to petition the Court of Appeals to permit an interlocutory appeal.

2. The following controlling question of law is certified for interlocutory appeal:

> Whether the court properly applied the United States Supreme Court's decision in <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997) in concluding that a reasonable jury could find from the record in this case that the City of Allentown's actions in hiring Officer Brett M. Guth, despite being aware of his previous driving record and then in retaining him despite the tailgating incident in 2006, constitutes deliberate indifference to the safety of the public, particularly pedestrian bystanders.

BY THE COURT:


  /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.